**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NADINE JOHNSON,

                 Plaintiff,

       v.                               Case No. C-1-09-254

GWEN MOONEY
FUNERAL HOME, INC.,

                 Defendant.

## ORDER

      This matter is before the Court upon a motion for summary judgment filed by defendant Gwen Mooney Funeral Home, Inc. (doc. 25), plaintiff's opposing memorandum (doc. 31), and defendant's reply (doc. 35).  Defendant has filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. 30).  Oral arguments on the motion were held on July 21, 2010.

### I.  Introduction

      Plaintiff brings this action claiming that defendant discharged her from her job as a Funeral Director based on her race and age and in retaliation against her for opposing what she believed to be unlawful race discrimination.[1]  She brings her claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), and Ohio Rev. Code Ch. 4112.

---

[1]Plaintiff also brought claims for promissory estoppel and breach of implied employment contract, but she has elected not to pursue those claims.

1

Plaintiff alleges in the amended complaint that she is an African-American whose date of birth is September 15, 1960; she performed well and was fully qualified throughout her eight years of employment as a Funeral Director with defendant; during the summer of 2008, defendant's Director of Operations, David Rees, a Caucasian, stated that defendant would not hire another African-American Funeral  Director but did not state he would not hire another Caucasian Funeral Director, while failing to provide any business reason for this racially discriminatory policy; Rees further stated that defendant would not hire any African-American Attendants unless they were "worth a shit"; and plaintiff objected to the racially discriminatory policy and attitude which Rees articulated as well as to defendant's application of its alleged policies in a racially discriminatory manner, including its alleged policy regarding attendance at its daily morning meetings.  Plaintiff further alleges that shortly after becoming aware of her opposition, defendant terminated plaintiff's employment on October 10, 2008, because of her age and race and because she had opposed what she believed to be racially discriminatory employment policies and practices.  Plaintiff claims that her termination permitted the retention and/or hiring of at least one substantially younger Caucasian, non-African-American Funeral Director.

## II.  Findings of Fact

1.     The Gwen Mooney Funeral Home offers funeral services at Spring Grove Cemetery, including funeral arrangements, visitations, chapel services, graveside burial services and cremation services.

2.     From 1999 to 2007, the Gwen Mooney Funeral Home was known as the Jon Deitloff Funeral Home and Jon Deitloff was the Managing Funeral Director.  The name changed to the Gwen Mooney Funeral Home in 2007 when Gwen Mooney became the Managing

Funeral Director.

3.   Plaintiff is a licensed Funeral Director and embalmer.  She began her employment at the

Jon Deitloff Funeral Home in August 2000.

4.   As a Funeral Director, plaintiff's job duties included arranging and coordinating funeral

services and preparing bodies for burial.

5.   After Mooney replaced Deitloff as the Managing Funeral Director in early 2007, Mooney

appointed Funeral Director David Rees as the Director of Operations of the Gwen

Mooney Funeral Home (hereinafter "Funeral Home").  The parties dispute what his

duties were.

6.   Certain meetings were conducted at 8:45 a.m. at the Funeral Home.  Despite directives

that she attend the meetings, plaintiff continued to miss or arrive late for the meetings.

She felt that the meetings were "more often than not" unnecessary.

7.   On February 11, 2008, Mooney and Rees warned plaintiff in writing that:

[Y]ou must attend each morning line-up meeting when you are scheduled to work
and you must be in attendance on time.  The morning line-up meeting starts at
8:45 a.m. each day.  Any unexcused absences or tardiness will be unacceptable.
Failure to adhere to the requirements of this practice may lead to further
disciplinary actions up to and including termination of employment.

Plaintiff's depo. exh. 2.

8.   Mooney and Rees noted in a document dated April 22, 2008, that

recent incidents [with plaintiff] have been detrimental to staff morale and team
work causing unnecessary duress in the workplace.  Successful completion of the
actions noted below will be required.  Failure to perform and maintain these
requirements on an ongoing basis may lead to further disciplinary action up to
and including termination of employment.

Rees depo., exh. 15.

9.   On October 8, 2008, a family with a recent loss was scheduled for a funeral arrangement

3

meeting.

10.     Plaintiff did not want apprentice Melissa Kloss to sit in on her arrangement meeting because she claimed that it made her "uncomfortable" to have an apprentice in the room while she spoke with a grieving family.

11.     Plaintiff and Rees had a verbal exchange regarding the matter at the Funeral Home while family members who were gathered for the funeral service of their deceased relative were present in the building.  The parties dispute what occurred during the exchange.

12.     The following day, Rees contacted Human Resources Director Mark Brown, who began an investigation that afternoon.

13.     Plaintiff admitted walking into the reception office and stating that she would not allow Kloss to sit in on the arrangement meeting.

14.     The Funeral Home discharged plaintiff and hired Juan Vasquez to replace her after her discharge.  Vasquez is a non-African-American who was born in 1969.

### III.  Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.

4

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### IV. Motion for Summary Judgment

Defendant moves for summary judgment on all claims against it. Defendant does not dispute that plaintiff can establish a prima facie case of race discrimination because she was replaced by Juan Vasquez, a non-African-American licensed Funeral Director, but defendant argues that plaintiff is unable to establish pretext. First, defendant contends that plaintiff cannot show that the reason for her discharge is factually false because there is no dispute that Board Member Reverend Damon Lynch spoke with her about her attendance deficiencies in an effort to secure her compliance with the Funeral Home's directive that she attend 8:45 a.m. meetings; there is no dispute that in October 2008, she refused to follow her supervisor's directive to allow an apprentice to observe a funeral arrangement meeting as part of the apprentice's training; and she does not deny that she confronted Rees in front of several staff members and within earshot of a grieving family. In addition, defendant argues there is no evidence that its decision to

5

discharge plaintiff was not reasonably based on the facts before it as Director of Human Resources Mark Brown conducted a thorough investigation by speaking to three of plaintiff's co-workers, who confirmed plaintiff's outburst and unprofessional behavior near a grieving family,  and to Father Charles Smith, who confirmed that plaintiff was loud and inappropriate.

Second, defendant contends that plaintiff lacks evidence to show that the Funeral Home's reasons did not motivate or were insufficient to motivate its decision to terminate her employment.  Defendant asserts that plaintiff cannot show that other employees, and particularly employees outside the protected class, were not terminated even though they engaged in substantially identical conduct.

Defendant also contends there is no evidence of circumstances that tend to prove that an illegal motivation was more likely than the motivation offered by the Funeral Home.  Defendant alleges that the comments by Rees that plaintiff offers as evidence of discrimination are stray remarks that are too isolated and ambiguous to create an inference of discrimination.

Defendant asserts that plaintiff's retaliation claim fails as a matter of law because she cannot prove the causation prong of a prima facie case.  Defendant argues that assuming plaintiff can show she complained of race discrimination, she has no evidence her concerns were ever communicated to Mooney or Rees.  Defendant also asserts that for the same reasons set forth above, plaintiff cannot prove that the reason provided for her discharge is false and the true motivation was retaliation.

Finally, defendant argues that plaintiff's age discrimination claims fail as a matter of law because under Sixth Circuit law, an age difference of nine years purportedly is not sufficient to establish that plaintiff was replaced by a substantially younger individual.  Defendant further argues that plaintiff cannot show that a similarly-situated, substantially younger employee was

6

treated better than she was. Assuming plaintiff can establish a prima facie case of age discrimination, defendant claims plaintiff has no evidence from which a rational factfinder could conclude that the Funeral Home's articulated business reason for terminating her employment is false and age discrimination was the real reason.

In response, plaintiff notes that defendant does not dispute that she has established a prima facie case of race discrimination. Plaintiff argues there is sufficient evidence to permit a jury to find that race was at least one of the factors motivating the decision of at least one individual who significantly contributed to the decision to terminate her. She specifically alleges unlawful motivation on the part of Rees, who recommended that plaintiff be fired. Plaintiff asserts that the evidence is sufficient to enable a jury to conclude that the reason defendant offers for Rees' termination recommendation does not adequately explain his decision. She further alleges that Rees' words and conduct at work betray a racial animosity toward blacks generally and black employees specifically from which a jury could infer that consideration of race infected his decision to terminate her. *See Cooley v. Carmike Cinemas, Inc*., 25 F.3d 1325, 1331 (6th Cir. 1994). Plaintiff points to the following alleged instances of discriminatory conduct by Rees to support her allegation:

- He denied black employees' request for assistance but granted white employees' requests.

- He applied a discriminatory standard when disciplining plaintiff for alleged attendance failings but turned a blind eye to white employees' failings.

- He announced that the Funeral Home would not hire another black Funeral Director. (*See Ercegovich v. Good Year Tire & Rubber Co*., 154 F.3d 344, 355 (6th Cir. 1998), which plaintiff cites for the proposition that a direct nexus between discriminatory comments and a challenged employment action need not be shown in order for remarks reflecting a discriminatory bias to remain highly probative).

7

- He hired a Hispanic to replace plaintiff in the hope of capitalizing on his race/ethnicity to gain a larger share of the non-black market and then hired three more non-black Funeral Directors. *See* Rees depo., p. 109.

- He provided false version of what happened in the funeral arrangement room on October 8, 2008, in that he behaved unprofessionally by loudly baiting plaintiff and repeatedly engaging in menacing and threatening conduct by slamming a chair behind her and slamming his hand on the desk.

- He gave a shifting rationale for his recommendation by clarifying his reasoning at his deposition after speaking with his attorney, *see* Rees depo., pp. 97-100, 114-115, and purportedly changing his rationale from "insubordination" as stated in his interrogatory answers to plaintiff's refusal to let Kloss "sit in on funeral arrangements with her." In any event, plaintiff claims that Rees had no authority to order her to allow Kloss to sit in and plaintiff therefore was not guilty of "insubordination" for not allowing her to do so.

In addition, plaintiff claims defendant's reason is suspect because defendant attempts to bolster its decision with attendance problems which had been resolved long before October 2008 and which disavow Mooney's purported belief that plaintiff was her "best employee."

As to her retaliation claim, plaintiff alleges there is sufficient evidence that she engaged in protected activity when she complained to both Rees and Lynch about what she believed to be Rees' racially discriminatory conduct at work, including Rees' alleged statement that he would not hire another black Funeral Director, no matter how well-qualified they were, and his application of a racial double-standard to plaintiff and defendant's other black Funeral Director, Douthitt; Rees knew that plaintiff had complained to Lynch; and there is evidence of a causal connection as her termination occurred a few months after she complained to Rees about his statement that he would not hire a black Funeral Director and he became angry and snide when she complained.  Plaintiff argues that the articulated reason for her termination is no more credible in the context of her retaliation claim than it is in the context of her discrimination claim.  Plaintiff contends that the jury could reasonably infer that Rees recommended her termination in order to rid himself of a black employee who was continuing to complain of his

8

racially discriminatory conduct.

Finally, plaintiff contends that the evidence is sufficient to show that her age was at least one of the factors motivating the termination decision.  She argues that there is no mathematical formula for establishing a prima facie case of age discrimination, particularly where the Funeral Directors hired after her replacement were substantially younger, and the hiring of these individuals was "consistent with Rees' professed desire to hire new funeral directors fresh out of school."  *See* Pltf's. Declaration, ¶ 17.

In reply, defendant concedes that plaintiff has established a prima facie case of race discrimination but contends that plaintiff has not produced competent evidence to rebut its legitimate nondiscriminatory and nonretaliatory reason for plaintiff's discharge, i.e., her "outburst near grieving friends and family members and her refusal to carry out the Director of Operations' directive that she include an apprentice in a funeral arrangement meeting as part of the apprentice's training, combined with a history of employment issues at the Funeral Home . . ."  Doc. 36, p. 1.  Defendant argues that plaintiff's contention that she need only show that her race or age was merely one factor causing her termination is wrong and that she must come forward with evidence that her termination was the result of unlawful discriminatory animus.  *See Passarge v. Sharefax Credit Union,* 277 F.Supp.2d 819 (S.D. Ohio 2003).

Defendant further contends that plaintiff has no evidence showing that her termination was motivated by her race.  Defendant alleges that plaintiff has no evidence that the Funeral Home's reasons for terminating her never happened; it was Mooney who made the decision to fire plaintiff and plaintiff has no evidence of racial bias by Mooney; the Court cannot second-guess defendant's business judgment; stray remarks are not sufficient to show that the articulated reasons for plaintiff's termination were motivated by racial animosity; and plaintiff's conclusory

allegations as to disparate treatment are not sufficient to establish that she was treated differently than similarly-situated white employees.

Defendant further objects in its reply to plaintiff's characterization in her Declaration of her conversation with Rees about the hiring of another Funeral Director, which defendant contends presents the conversation in a materially different way than plaintiff did in her deposition.  Specifically, defendant contends that plaintiff's deposition testimony does not disclose that Rees expressed racial hostility, whereas plaintiff states in her Declaration that Rees told her he would not hire another black Funeral Director.  Defendant argues that even if Rees made this statement, it is unrelated in time and content to Mooney's decision to terminate plaintiff.  *See* doc. no. 31-1.

Defendant contends that plaintiff's retaliation claim fails for the additional reason that temporal proximity, without more, is not sufficient to establish pretext, and plaintiff has no evidence beyond the three-month lapse between her alleged complaints and her discharge to create an issue of fact as to whether her discharge was motivated by retaliation.  ***See Steiner v. Henderson***, 121 Fed.Appx. 622, 626-27 (6th Cir. 2005).  Defendant alleges that Rees' purportedly angry and snide reaction to her complaints does not imply an intent to terminate her for complaining.  ***See Harris v. U.S. Postal Service,*** 2006 WL 1720541 (N.D. Ohio 2006) (unpublished decision).

Finally, defendant contends that plaintiff does not dispute that her replacement is not substantially younger than she is; the fact that the Funeral Home hired substantially younger Funeral Directors after it hired her replacement is immaterial to her claim; and no inference of discrimination can be drawn from Rees' alleged desire to hire "funeral directors fresh out of school."

10

## V.  Applicable Law

### A.  Race/Age Claims

Under the law of this Circuit, the same evidentiary framework applies to discrimination claims brought under 42 U.S.C. § 1981, Title VII and state law.  *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992).  A plaintiff must prove discrimination through either direct or circumstantial evidence.  *Smith v. Chrysler Corp*., 155 F.3d 799, 805 (6th Cir. 1999).  A plaintiff who lacks direct evidence of discrimination may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class.  *Mitchell,* 964 F.2d at 582; *Geiger v. Tower Automotive,* 579 F.3d 614, 622 (6th Cir. 2009) (*McDonnell Douglas* burden shifting framework applies to age discrimination claims based on circumstantial evidence following the Supreme Court's decision in *Gross v. FBL Financial Services, Inc*., __ U.S. __, 129 S.Ct. 2343 (2009)).  Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that she was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).  In the case of alleged age discrimination, the fourth prong is modified in that the plaintiff must show that she was replaced by a substantially younger individual, which may include an individual within the protected class.  *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-313 (1996); *Coryell v. Bank One Trust, Co.*, 101 Ohio St.3d 175, 180-181, 803 N.E.2d 781, 787 (2004) (term "substantially younger" in this context defies an absolute definition and must be determined based on the particular circumstances of each case).

If the plaintiff seeks to establish that she was treated less favorably than a similarly-

11

situated individual, she must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Ercegovich,* 154 F.3d at 352. To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000). "[T]he weight to be given to each factor can vary depending upon the particular case." *Johnson v. Kroger Co*., 319 F.3d 858, 867 (6th Cir. 2003). As stated by the Sixth Circuit in *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005),

> [The plaintiff] need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated.' Rather, [the plaintiff] and the employee with whom he seeks to compare himself must be similar in 'all of the relevant aspects.' *Ercegovich*, 154 F.3d at 353.

In order for the conduct of a comparator to be considered the "same" as that of the plaintiff, it must be "similar in kind and severity." *See Barry v. Noble Metal Processing, Inc*., 276 Fed.Appx. 477, 483 (6th Cir. 2008) (citing *Clayton*, 281 F.3d at 611).

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different

evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer*, 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

"[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003) (citing *Smith v. Chrysler Corp*., 155 F.3d 799, 807 (6th Cir. 1998)). In order to establish pretext, a plaintiff must allege more than a dispute over the facts upon which her discharge was based. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). The plaintiff must also put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. *Id.* (citing *Chrysler Corp.,* 155 F.3d at 806-807). An employer has an honest belief in its nondiscriminatory reason for discharging the employee "where the employer reasonably relied

13

'on the particularized facts that were before it at the time the decision was made.'" ***Majewski v.***
***Automatic Data Processing, Inc***., 274 F.3d 1106, 1117 (6th Cir. 2001) (citing ***Chrysler Corp***.,
155 F.3d at 807).  In determining whether an employer "reasonably relied on the particularized
facts then before it," it is not necessary that "the decisional process used by the employer be
optimal or that it left no stone unturned." ***Chrysler Corp***., 155 F.3d at 807.  "Rather, the key
inquiry is whether the employer made a reasonably informed and considered decision before
taking an adverse employment action." ***Id***.  As long as an employer has an honest belief in its
proffered nondiscriminatory reason for discharging an employee, the employee cannot establish
that the reason was pretextual simply because it is ultimately shown to be incorrect. ***Majewski***,
274 F.3d at 1117 (citing ***Chrysler Corp***., 155 F.3d at 806).  The court may not secondguess the
employer's business judgment but must simply evaluate "whether the employer gave an honest
explanation of its behavior." ***Hedrick v. W. Res. Care Sys***., 355 F.3d 444, 462 (6th Cir. 2004).

The court may consider on summary judgment witness statements contained in an
investigative report "not to prove their truth, . . . but to demonstrate the state of mind and motive
of Defendant's managers in discharging Plaintiff." ***Michael v. Caterpillar Fin. Servs. Corp***., 496
F.3d 584, 598 (6th Cir. 2007) (quoting ***Haughton***, 206 Fed.Appx. at 532).

### VI. Resolution

### A.  Discrimination Claims

### 1.  Race Discrimination Claim

Defendant concedes that plaintiff has established a prima facie case of race
discrimination.  Defendant in turn has articulated a legitimate, nondiscriminatory reason for
plaintiff's termination.  Defendant claims that it discharged plaintiff because of her outburst near
grieving family and friends at the Funeral Home and her refusal to carry out the Director of

14

Operations' directive that she include an apprentice in a funeral arrangement meeting as part of the apprentice's training, combined with a history of employment issues at the Funeral Home. Plaintiff argues that the reasons offered by defendant for her termination are a pretext for race discrimination.

Plaintiff attempts to show pretext in several ways.  She alleges that defendant has provided a shifting rationale for the termination decision by first alleging that she had engaged in insubordination but then including as a reason for Rees' termination recommendation her refusal to let Kloss sit in on family arrangements with her.  Plaintiff contends this was not insubordination because Rees lacked authority to issue that directive.  Plaintiff also challenges the factual basis for her discharge.  She does not dispute that there were issues with her attendance at the 8:45 a.m. meetings, but she claims defendant was not justified in relying on those issues because they had been resolved some time before her termination.  Plaintiff also challenges the witnesses' version of the October 8th incident and argues that a jury could conclude from evidence indicating that Rees was biased that he manipulated the investigation so as to provide a reason to terminate her.

Plaintiff argues that in addition to failing to make a reasonably informed decision, defendants' reasons were insufficient to motivate her discharge because similarly-situated employees outside of the protected class who engaged in conduct of comparable seriousness were not terminated.   Plaintiff offers two examples of dissimilar treatment.  First, she claims that Rees applied the attendance policy for 8:45 a.m. meetings to discipline defendant's two black Funeral Directors and looked the other way for its white employees.  Second, she asserts in ¶ 16 of her declaration that,

Both before and after Rees became "director of operations," the front office area,

also called the reception or "hangout" area, was constantly occupied and filled with loud conversation, heated debates and arguments and/or laughter.  Rees frequently engaged in this conduct.  This conduct, including that of Rees, required me when I was serving as the director of a funeral to often either personally or through an attendant ask those in that area, including Rees, to discontinue this conduct, explaining that it was disruptive and disrespectful to the family of the funeral that I was serving.  None of the funeral home employees who engaged in this conduct were fired for doing so.

Plaintiff also points to statements and actions by Rees, who recommended to Mooney that she be fired, which she alleges are indicative of a bias against blacks.  She alleges that:

•  Rees denied black employees' requests for assistance but granted those of white employees.

•  Rees applied a discriminatory standard when disciplining plaintiff for alleged attendance failings but turned a blind eye to the failings of white employees.

•  He told plaintiff that defendant would not hire another black Funeral Director.

•  He hired a Hispanic to replace plaintiff in the hope of capitalizing on that individual's race/ethnicity to gain a larger share of the non-black market, and after that defendant hired three more non-black Funeral Directors.

•  He commented on the size of the penis of a black corpse.

•  He treated the corpses of whites but not blacks with dignity by once leaving a black corpse uncovered.

•  Once when plaintiff and Rees were discussing racial issues, Rees said, "[T]hey say once you go black, you don't go back.  Well, once you go white, you're right."  Doc. 31, p. 2.

•  He staffed funerals differently depending on the race of the decedent, routinely telling a black attendant who was scheduled to work a white funeral to stay home and summoning a white off-duty attendant to work in his place.  When a black attendant was permitted to be at the funeral home during a white funeral, he was instructed to stay in the back and take out the garbage while a white attendant was placed up front.

As an initial matter, the court must address defendant's objection that plaintiff's declaration varies her deposition testimony in material respects.  Defendant claims that plaintiff has changed her deposition testimony that Rees told her he would not hire another Funeral

16

Director to a declaration that Rees told her he would not hire another black Funeral Director.

Plaintiff's depo., pp. 87-88; Decl., 31-1, ¶ 4.

The deposition testimony to which defendant refers is found at pages 86-90 and is as

follows:

Q.    Did you have a conversation with Mr. Rees concerning hiring – the hiring of African-
       American funeral directors?
       * * *
A.    Well, more than once.  But one in particular was when he called me into the office and
       told me that he was hiring another apprentice, that they're white apprentices that we
       would have on staff . . .
       * * *
A.    I asked him – I said, well, what about the African-American funeral director?  I thought
       we were hiring a black funeral director.  And he said, well, we ain't hiring one . . . .
       * * *
A.    Yes.  John and I actually thought we – he was hiring because we were told that that was
       the next hire and the board had approved, according to Gwen, the hire of another funeral
       director.  And that was the conversation we had ongoing with both Gwen and Dave
       because the white funeral directors were working every other weekend.
       John and I were working every weekend to try to accommodate the families.  We
       were – we were just overworked.  And so the issue was we needed another black
       funeral director.
Q.    Okay, what else was said when you were discussing this?
A.    I – I asked him about hiring a funeral attendant and he said, well, if you can find one
       worth a shit.

In her declaration, plaintiff states:

Rees told me in the summer of 2008, after he had become "director of
operations," that the Defendant would not hire another black funeral director.  He
told me this shortly after he and Mooney confirmed that the Defendant was
looking to hire another funeral director and while the three of us were engaged in
an ongoing discussion about the need to hire another black funeral director
because Defendant's only two black funeral directors at the time, myself and John
Douthitt, were overworked.  Rees did not tell me then that the Defendant was not
going to hire another funeral director.  He simply stated that it would not hire
another black funeral director.  Rees became visibly angry, his face reddening,
when I told him that day that I considered his position regarding not hiring
another black funeral director to be unfair and reflective of a racial double
standard.

Doc. 31-1, ¶ 4.

17

Although a party cannot vary her deposition testimony by submitting a declaration that contradicts her testimony, plaintiff's declaration does not contradict her earlier testimony but instead clarifies some rather disjointed testimony that was interrupted at several points by the questioning of counsel. Thus, the court finds no basis on which to exclude the portion of the declaration pertaining to the discussion of the hiring of a black Funeral Director.

Defendant contends that Rees' comments are stray remarks which are not sufficient to show that defendant was motivated by racial animosity when it terminated plaintiff's employment. *See McDermott v. Continental Airlines, Inc.,* 339 Fed.Appx. 552, 556-57 (6th Cir. 2009). Defendant also contends in its reply that many of plaintiff's assertions are not supported by facts. These include her assertion that Rees staffed funerals differently depending on the race of the decedent; Rees denied her requests for makeup kits but granted those of white employees; and Rees relegated black attendants to the back of the funeral home and instructed a black attendant to take out the garbage, which Vernon Carter, the attendant in question, denies occurred. Carter Decl. ¶¶ 4-5. Defendant also alleges that the other black Funeral Director, Douthitt, testified at his deposition that he did not have concerns about the way he was treated. Douthitt depo., pp. 14, 24, 34, 35.

Plaintiff relies on *Ercegovich*, 154 F.3d 353, in support of her claim that the fact-finder can take Rees' alleged discriminatory conduct and remarks into account in determining whether defendant was motivated by her race in deciding to terminate her. In *Ercegovich,* several members of management allegedly made numerous age-biased comments which evidenced a managerial policy hostile to older workers. In contrast, the court in *McDermott* found that two comments which were not placed in the context of any employment decision and which occurred over a three-year period were too remote in time from the termination decision to constitute

18

circumstantial evidence of individualized discrimination directed at the plaintiff.

The court agrees with plaintiff that a trier-of-fact, drawing all reasonable inferences in her favor, could determine that race was a motivating factor in the termination decision. The evidence shows that Rees played a significant role in the termination decision. Moreover, for summary judgment purposes, the Court must accept as true plaintiff's allegations concerning racially discriminatory conduct Rees engaged in and remarks he made which a reasonable fact-finder could find are indicative of a racial bias. A jury could infer from this evidence that Rees' alleged racial bias tainted the termination decision and that plaintiff's race therefore factored into the decision. This is a matter for the jury to decide after considering the evidence, resolving the many disputed factual issues, and determining the credibility of the witnesses at trial. Because there are genuine issues of material fact underlying the resolution of plaintiff's race discrimination claim, defendant is not entitled to summary judgment on this claim as a matter of law.

**2. Age Discrimination**

Defendant contends that plaintiff cannot establish a prima facie case of age discrimination because she cannot show that she was replaced by a substantially younger individual. Defendant is incorrect in its assertion that under Sixth Circuit law, an age difference of less than ten years is not significant enough to establish that a plaintiff was replaced by a substantially younger individual. Although defendant cites *Grosjean v. First Energy Corp*., 349 F.3d 332, 340 (6th Cir. 2003) for this proposition, the Sixth Circuit in *Grosjean* established the bright-line rule that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id*. The Court indicated that an age difference greater than six years can be significant by noting that "this rule will assist district courts in making a firm determination, yet does not encroach on our precedent holding that eight years can be a significant age difference." *Id.* In this case, plaintiff has established a prima facie case of age discrimination by showing that she was replaced by an individual who was nine years younger than her.

Plaintiff alleges that she can show pretext in the context of her age discrimination claim for the same reason she alleges pretext in connection with her race discrimination claim. In addition, plaintiff alleges that the hiring of substantially younger Funeral Directors after her replacement, including two in their twenties, is consistent with Rees' professed desire to hire new Funeral Directors "fresh out of school." Doc. 31, p.19. *See* Plaintiff's Decl., ¶ 17. Defendant relies on *Gagne v. Northwestern Nat. Ins. Co*., 881 F.2d 309 (6th Cir. 1989) for the proposition that this remark does not support her claim because no inference of age discrimination can be drawn from the statement. In *Gagne*, the court held that a remark by the

20

plaintiff's supervisor that he "needed younger blood" was insufficient to preclude summary judgment in favor of defendant where the plaintiff herself characterized the remark as an isolated remark which her supervisor made facetiously during a meeting attended by a number of employees and which he did not direct at any particular individual. *Id*. at 314. The court noted consistent with circuit precedent that isolated and ambiguous remarks of this nature "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of discrimination." *Id*. (citations omitted).

The court finds that there are genuine issues of material fact as to whether plaintiff's termination was a pretext for age discrimination. Although Rees' alleged remark about hiring individuals fresh out of school is not direct evidence of age discrimination, it is indirect evidence that a jury is entitled to consider in order to determine whether Rees harbored a bias against older employees. Accordingly, defendant is not entitled to summary judgment on the age discrimination claim.

## B. Retaliation Claim

The same burden-shifting analysis used for resolving Title VII cases applies to retaliation claims brought under § 1981 and under Ohio Rev. Code § 4112's anti-retaliation provision. ***Chandler v. Empire Chem., Inc.,*** 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954 (1994); ***Wade v. Knoxville Utils. Bd***, 259 F.3d 452, 464 (6th Cir. 2001). To prove a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took adverse employment action against her; and (4) a causal connection exists between the protected activity and the adverse employment action. ***Ford v. Gen. Motors Co.,*** 305 F.3d 545, 552-53 (6th Cir. 2002); ***Thatcher***

21

*v. Goodwill Industries of Akron,* 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997).

An employee is protected against employer retaliation for opposing any practice that the employee reasonably believed to be a violation of the anti-discrimination laws. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful." *Id*. at 579-580.

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that defendant would not have taken the adverse action if the plaintiff had not engaged in protected activity. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). Evidence that the defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (citing *Moon v. Transp. Drivers, Inc*., 836 F.2d 226, 230 (6th Cir. 1987)); *see also Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.") Where, however, "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525 (citing *Little v. BP Exploration & Oil Co*., 265 F.3d 357, 365 (6th Cir. 2001)).

"The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen,* 229 F.3d at 563. Once the plaintiff establishes a prima facie case of retaliation, the burden is on the defendant to articulate a legitimate reason for the adverse action, which the plaintiff may rebut by producing credible evidence of pretext. *Jackson v. Pepsi-Cola,*

22

*Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir. 1986).

Plaintiff claims she engaged in protected activity when she complained to both Rees and Lynch about what she believed to be Rees' racially discriminatory conduct at work, including his alleged statement that he would not hire another black Funeral Director and his application of a racial double-standard to her and Douthitt.  Plaintiff also claims that defendant knew of her protected conduct.  She alleges that Board member Lynch shared complaints she had made to him about Rees' treatment with the Board, he identified plaintiff as the one who had made the complaints, and he emphasized to the Board in connection with the complaints that he would not tolerate "any semblance of discrimination."  Doc. 31, p. 5.  Plaintiff specifically claims that Rees knew she had accused him of engaging in racial discrimination and that Rees approached Lynch to assure him that he "wasn't a racist."  *Id*.

Plaintiff further alleges that there is evidence of a causal connection and pretext because her termination was proximate to her protected activity.  She alleges that she was fired a few months after she specifically complained to Rees about his statement that he would not hire another black Funeral Director and Rees reacted negatively to her complaint by becoming "angry and snidely dismissive."  Plaintiff asserts that his conduct reflects the mindset of an individual who is resentful of another who continues to complain of his ongoing racial discrimination.  She relies on her following deposition testimony to show that a jury could reasonably infer that Rees was acting in bad faith by relying on the October 8, 2008 incident as the reason for her termination when he in fact was attempting to rid himself of an employee who was continuing to complain of his racially discriminatory conduct:

Q.    All right.  What did you – when you and he discussed the hiring or not
        hiring of a African-American funeral director or attendant, what did you
        say to him?

23

                        * * *

A.      Oh, I told him it wasn't fair over and over again.  And I discussed the double standard over and over again, same conversation over and over and over again. The staffing, the treatment of white versus black, the way he talks down to blacks versus whites, the way he nitpicks, all of that.
It's been the same argument.  And when I say something, it's bitch, bitch, bitch, nag nag, nag, whah, whah, whah.

Plaintiff's depo., pp. 113-114.

Plaintiff has come forward with sufficient evidence to proceed on her retaliation claim. The record includes evidence that plaintiff engaged in protected activity by complaining to Lynch and to Rees and that Rees knew of the complaints to Lynch.  In addition to plaintiff's own testimony that she complained to Rees of a double standard, Lynch's deposition testimony demonstrates that at some point prior to plaintiff's termination, she expressed concern that she and Douthitt were being treated differently than other members of the Funeral Home staff; that Rees was talking down to Douthatt and asking him to wear certain apparel that was not culturally comfortable for him; and that Rees was trying to change the kind of colloquial language Douthatt used.  Lynch testified that he then told the Board about plaintiff's complaints and announced at the Board meeting that there would not be "any semblance of discrimination."  Lynch testified that although he never directly addressed these concerns with Rees, Rees approached him some time after the Board meeting to assure Lynch that he was "a good guy" and he was not a racist. Lynch depo., pp. 30-31.  The fact that plaintiff was terminated a few months after Lynch presented her complaints to the Board, coupled with evidence that Rees became upset by plaintiff's complaints of discrimination to him and the other circumstances surrounding her termination, are sufficient to create a jury question as to whether there is a causal link between plaintiff's complaints and her termination.  Thus, defendant is not entitled to summary judgment on plaintiff's retaliation claim.

**VII. Conclusion**

In accordance with the foregoing, defendants' motion for summary judgment is

**GRANTED** as to plaintiff's claims for promissory estoppel and breach of implied employment

contract.  The motion is **DENIED** as to plaintiff's claims for age and race discrimination and

retaliation.  The case will proceed to trial on these claims pursuant to the schedule previously

established by the Court.

**IT IS SO ORDERED**.

S/ Herman J. Weber
HERMAN J. WEBER, SENIOR JUDGE
 UNITED STATES DISTRICT COURT